JACOBS, Appellant, vs. SPALDING and others, Respondents.

*February 9 — February 28, 1888.*

*(1) Limitation of actions: Contract under seal. (2-4) Contracts: Construction: Forfeiture: Separate contracts in one instrument: Consideration: Conditional agreement: Construction by parties, when shown by delay in bringing action.*

1. An action to recover the purchase price of land, etc., based upon a contract under seal executed by private persons, may be brought at any time within twenty years after the cause of action has accrued. R. S. sec. 4220.
2. In construing a contract all of its terms should be considered.
3. When the terms of a contract are indefinite, uncertain, and susceptible of two constructions, and by giving them one construction one of the parties would be subjected to a forfeiture, and by giving them the other no such forfeiture would be incurred and no injustice would be done to the other party, the contract should be so construed as not to create the forfeiture.
4. The first paragraph of a written contract stated that in consideration of $13,000 the plaintiff had sold a steamboat and certain real estate to the defendants, the deeds thereof being executed on the same day as the contract. The second paragraph stated that the plaintiff had further agreed to sell and convey certain other land for $2,000, to be paid when a deed of said land could be procured under a proper order of court for the sale of the same; that the plaintiff would use due diligence in procuring the guardian of the minor owner to make application for an order for such sale; and

that in the event that such land, at its offer at public sale under such order, should not bring over $2,000, the same should be sold to the defendants for that sum; but in case the plaintiff should fail to make such title good to the defendants he should suffer no other forfeiture than in the contract mentioned. The third paragraph provided for the payment of $12,000, and that the defendants should retain $1,000 until the plaintiff should cause to be executed and delivered to them a conveyance of the land mentioned in the second paragraph, founded upon a proper order of court; and upon delivery of such conveyance the defendants should pay to the plaintiff said $1,000 as well as the $2,000 purchase money of said land; and if the plaintiff should entirely fail to cause said land to be conveyed to the defendants, the said $1,000, part of the $13,000 first aforesaid, should be forfeited to the defendants as liquidated damages for such breach. The land mentioned in the second paragraph sold at the public sale for more than $2,000, and the plaintiff was unable to purchase it for that sum. Nearly twenty years later he brought this action to recover the $1,000 retained by the defendants. *Held*, on demurrer:

(1) The contracts in the first and second paragraphs were separate and distinct contracts, for separate and distinct considerations; and the $1,000 was retained not as a part of the consideration for the land mentioned in the second paragraph, but merely as security for the performance of the contract as to such land.

(2) The contract for the conveyance of the land mentioned in the second paragraph was upon the condition that such land could be purchased for $2,000 at the public sale.

(3) Upon the demurrer the delay in bringing the action should not be considered as showing the construction which the parties themselves put upon the contract.

APPEAL from the Circuit Court for *Brown* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The plaintiff brought this action, on May 12, 1886, to recover $1,000, and the interest thereon, from the defendants, upon the following contract, viz.:

"This agreement, made by and between *John B. Jacobs*, of the town of Marinette, in the county of Oconto and the state of Wisconsin, of the one part, and *Jesse Spalding*, of the city of Chicago, in the state of Illinois, *Abner Kirby*, of

the city of Milwaukee, in the state of Wisconsin, *Isaac Stephenson*, of said town of Marinette, Oconto county, and *Samuel M. Stephenson*, of Menominee, in the county of Menominee in the state of Michigan, of the other part, witnesseth, that the said *John B. Jacobs*, in consideration of the sum of $13,000, hath bargained and sold to the party of the other part that certain property known as the Steamboat Queen City, with her machinery, furniture, and appurtenances, and all those certain tracts of real estate owned by him in the Menominee river, and on the bank of said river, in Oconto county, described as follows: Lot three (3) of section thirty-three (33), containing 1 74–100 acres; lot number five (5) in section thirty-two (32), containing 21–100 acres; lot six (6) of section thirty-two (32), containing 1 25–100 acres,— all in township thirty-one (31) of range twenty-three (23) E.; lot number eight (8), section six (6),in township number thirty (30) N., range twenty-four (24) west [east?], containing 56–100 acres; also lots of land described in warranty deed from party of first part to party of second part, dated May 14, 1866, the deeds for said boat and land being executed this May 14, 1866; also a description of land described in auditor's deed of state of Michigan, dated May 2, 1860.

"And further hath agreed to sell and convey that certain real estate on the bank of the Menominee river, in said town of Marinette, meaning all the land known as the 'Jane Dunnett Land,' and willed by her to her son James Dunnett, for the sum of two thousand dollars, to be paid when a deed of the said land can be procured under a proper order of the court for the sale of the same; it being understood and agreed that said *John B. Jacobs* will use due diligence in procuring the guardian of said minor child of Jane Dunnett to make application for an order of such sale, and to prosecute all proper and legal proceedings therefor with diligence; *and that in the event that said real estate, at its*

*offer at public sale under such order, shall not bring over the sum of $2,000, the same shall be sold to said party of the second part for that sum, and they agree to pay said sum of money for the same;* but, in case the said *John B. Jacobs* shall fail to make such title good to said parties, he shall suffer no other forfeiture than herein mentioned.

"And it is agreed that the parties of the second part pay party of the first part the sum of $3,000 down, and the sum of $9,000 in equal annual payments, in one, two, and three years from the date, with seven per cent. per annum, annually, interest thereon; and that the party of the second part keep and retain the sum of $1,000 until the party of the first part shall cause to be executed and delivered to them a good deed of conveyance of said property so willed by said Jane Dunnett to her son, founded upon and under a proper order of a court of competent jurisdiction for the sale thereof; and, upon delivery of the deed aforesaid, party of the second part shall pay party of the first part the said sum of $1,000, as well, also, as the said sum of $2,000 for the purchase money of said land; and, if said party of the first part shall entirely fail to cause said Dunnett land to be conveyed to party of the second part, the said sum of $1,000, part of the $13,000 first aforesaid, be deemed to be forfeited to party of the second part in payment as and for liquidated damages for his breach in so failing to procure such conveyance to them.

"Witness the hands of the parties hereto, respectively, this 14th day of May, A. D. 1866.

"JOHN B. JACOBS.    [Seal.]    WELLS & SPALDING.    [Seal.]
"S. M. STEPHENSON. [Seal.]    I. STEPHENSON.    [Seal.]
"ABNER KIRBY.    [Seal.]

"In the presence of E. S. INGALLS."

The plaintiff, in his complaint, sets out the contract, and alleges full performance on his part, except as to the condition upon which the defendants were to be entitled to

retain the $1,000 to recover which the action is brought, and, as to such condition, he alleges generally that it became impossible for him to perform it, and then alleges the following facts as an excuse for the nonperformance of said condition on his part, to wit: "And as to the aforesaid condition of said agreement, which it became impossible for the plaintiff to perform, and from the performance of which the plaintiff was excused and discharged, plaintiff alleges that said condition only relates to the lands mentioned in said written agreement as the 'Jane Dunnett Land;' that he used due diligence in procuring the minor child of Jane Dunnett to make application for an order for sale of the land in said agreement referred to as the 'Jane Dunnett Land,' willed by her to her son James Dunnett, and that, upon application duly made on behalf of said minor, an order of license for the sale of said land was duly made by the county court in and for said county of Oconto on the 4th day of September, 1866; and that after due notice, pursuant to said order and the laws of Wisconsin, the said land known as the 'Jane Dunnett Land' was offered for sale at public vendue, on the 8th day of October, 1866, at the place in said town of Marinette designated in the notice of said sale, and was thereupon duly struck off and sold to the highest bidder for more than $2,000, to wit, for the sum of $3,000 or upwards; that plaintiff attended said sale, and endeavored to bid off and purchase the said 'Jane Dunnett Land for $2,000 or less, and did actually bid $2,000 therefor at said sale, but the plaintiff was overbidden by other parties, and was thereby, without any fault on his part, prevented from purchasing said lands for $2,000; that the defendant *Isaac Stephenson*, for himself and the other defendants herein, also attended said sale, and was then and there notified by the plaintiff that, because plaintiff was overbidden, he (the plaintiff) could not buy said 'Jane Dunnett Land' for $2,000, and that if they (said defend-

ants) wanted the land they should bid for it; that, accordingly, the said *Isaac Stephenson* made a bid of about $2,200 for said land, when a higher bid was made by some other person; that the said *Isaac Stephenson*, for himself and by authority of the other defendants, then abandoned all further efforts to purchase said land, and the same was afterwards, at the same sale, duly struck off and sold to this plaintiff for $3,300 or thereabouts, which was the highest sum bidden therefor. And the plaintiff alleges that the aforesaid sum of $1,000, part of said $13,000, by virtue of said agreement and of the facts above stated became, immediately after the date of said public sale, and still is, due and payable from said defendants to said plaintiff, with interest thereon from October 8, 1866; but although then and often afterwards thereunto notified and requested, the said defendants have never paid said sum of $1,000, nor any part thereof, but have refused, and still do refuse, to pay the same, or any part thereof, to the damage of this plaintiff in the sum of $2,500."

To this complaint the defendants demurred, upon two grounds: "(1) That the complaint does not state facts sufficient to constitute a cause of action. (2) That the action was not commenced within the time limited by law; that is to say, the time within which plaintiff could commence his action was limited, by section 4222 of the Revised Statutes, to the term of six years after the cause of action accrued." The circuit court sustained the demurrer, and, as the plaintiff declined to serve an amended complaint within the time fixed in the order sustaining the demurrer, judgment was entered upon such order, dismissing the complaint of the plaintiff, with costs to the defendants; and from such judgment the plaintiff appeals to this court.

For the appellant there were briefs by *Ellis, Greene & Merrill*, and oral argument by *Mr. E. H. Ellis*.

For the respondents there was a brief by *Fairchild & Fairchild*, and oral argument by *Mr. H. O. Fairchild*.

TAYLOR, J.   Whether the learned circuit judge sustained the demurrer on the ground that the complaint did not state facts constituting a cause of action, or upon the ground that the action was barred by the statute, or upon both grounds, does not appear from the records.   From the course of the argument on this appeal, we are led to believe that the circuit judge sustained the demurrer upon the first ground, viz., that the complaint does not state facts sufficient to constitute a cause of action.   We think it too clear for argument that the action was not barred by the six years statute.   The promise of the defendants upon which the action is brought is contained in a sealed written contract, and the action is based solely upon such sealed written contract.   The limitation of such actions is contained in sec. 4220, R. S., instead of sec. 4222, R. S.   Sec. 4220 prescribes a twenty years limitation.   Subd. 2 of said section reads as follows: "An action upon a sealed instrument, when the cause of action accrues within this state, except those mentioned in section four thousand two hundred and twenty-two."   The exception referred to in sec. 4222 is as follows: "An action upon any bond, coupon, interest warrant, or other contract for the payment of money, whether *sealed* or otherwise, made or issued by any town, county, city, or school district in this state."   There can be no pretense that the contract set up in the complaint in this action is a contract of the kind mentioned in said sec. 4222, and so it does not come within the six years limitation prescribed by said section.

If the demurrer can be sustained at all, it must be upon the ground that the complaint does not state facts constituting a cause of action, and whether it does or not depends upon the construction which should be given to the second paragraph of the contract.   The learned counsel for the appellant contends that, by a proper construction of such paragraph, it is evident that the plaintiff's contract to con-

vey the Dunnett land was conditional, and that he only agreed to convey it in case it was sold at the public sale for a sum not exceeding $2,000; and if, at such sale, it was sold for more than $2,000, then he was under no obligation to make a good title to the defendants therefor.   On the part of the learned counsel for the respondents it is contended that the contract of the appellant was to convey the land absolutely, without regard to the price at which it might be sold at public sale, and without any regard to the fact whether a judicial sale of this property could or could not be obtained.

In determining what the parties really intended in the second paragraph of the contract, it is important to determine, first, whether the $1,000 retained by the vendees to secure the performance of the contract in the second paragraph thereof was any part of the consideration which was agreed to be paid for the lands described in such second paragraph.   The learned counsel for the respondents insist that such $1,000 was part of the consideration agreed to be paid for such lands, or, if not, that it must be held that the agreement in the second paragraph was an inducement to the respondents to make the purchase mentioned in the first paragraph.   The counsel for the appellant contends that the two contracts are as much independent of each other as though made by different writings and at different times; and the fact that they are contained in the same writing does not connect or make them dependent upon each other.   That the contract in this case is a separate contract, for a separate and specific consideration agreed to be paid for the steamboat and land described in the first paragraph of the contract, and for a separate and specific consideration agreed to be paid for the land described in the second paragraph, can hardly admit of a doubt.   The first paragraph asserts that the plaintiff has sold and conveyed to the defendants the steamboat and certain lands

therein described, for the consideration of $13,000, and the third paragraph provides how the $13,000 shall be paid; and the $1,000 out of the $13,000 agreed to be paid for the property described in the first paragraph is not retained as a part of the consideration for the Dunnett land, but as security for the performance of the plaintiff's contract for the sale of that land. The second paragraph expressly declares that the consideration to be paid for the Dunnett land is $2,000, and no more.

In the case of *Johnson v. Johnson*, 3 Bos. & P. 162, it was decided that where the two tracts of land were conveyed in the same instrument for the sum of £1,000 and the title failed as to one tract, the grantor could recover the purchase money paid for that tract, without regard to the relative value of the tracts or the value of the lands conveyed as a whole. The recovery was sustained on the ground that, before the conveyance was made, the tracts had been valued separately; the one to which the title failed at £300, and the other at £700. This case is cited with approval by this court in *Sawyer v. C. & N. W. R. Co.* 22 Wis. 411. Parsons, in his work on Contracts, says: "If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable. And the same rule holds where the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed, although the latter is in its nature single and entire." See, also, upon this subject, *Goodwin v. Merrill*, 13 Wis. 658; *Robinson v. Green*, 3 Met. 159; *Lucesco Oil Co. v. Brewer*, 66 Pa. St. 351; *Quigley v. De Haas*, 82 Pa. St. 273; *Sickels v. Pattison*, 14 Wend. 257.

It seems quite apparent that the two contracts in the first and second paragraphs of the writing are separate and distinct contracts, for separate and distinct considerations; and

that the reservation, in the third paragraph, of the $1,000 due on the first contract which had been executed on the part of the plaintiff, was simply a reservation to secure the performance of the second contract for the sale of the Dunnett land, and not at all as a part consideration for said land.

Treating the contract for the sale of the Dunnett land as an independent contract, it is evident that the only consideration for the promise of the plaintiff to procure a title to those lands and then convey them to the defendants, is the promise of the defendants to pay him $2,000; with an agreement on the part of the plaintiff to forfeit, as liquidated damages, $1,000 in case he failed to perform his contract. We agree with the learned counsel for the respondents that it is not very clear from the language of the contract what was the real intent of the parties, and that the language used is susceptible of different constructions.   In that state of the case, it seems to us it is the duty of the court to give such construction to the language used as would make a contract such as a man of ordinary prudence would be likely to make, if the language used is fairly susceptible of such construction.   Under the circumstances surrounding the parties at the time this contract was made, is it reasonable to suppose that the plaintiff would contract, without condition, to make a good title to these lands to the defendants for the consideration of $2,000, and, if he did not, that he would forfeit or pay, as liquidated damages, the sum of $1,000?

We think this question must be answered in the negative. At the time the contract was made, both parties knew that the title to said lands was not in the plaintiff, but was owned by a minor; that such title could only be obtained from such minor by a judicial proceeding and by a judicial public sale; and that the law required that at such public sale, if the court directed one, the lands must be sold to the highest bidder.   It does not seem that an ordinarily prudent man would make an unconditional promise to procure

Jacobs vs. Spalding and others.

such title for a consideration not exceeding the real value of the property, and agree to forfeit half such sum if he should fail to procure it. We think the case shows that the $2,000 agreed to be paid by the defendants did not exceed its supposed real value, and was not, at the time, considered by the parties as anything more than a fair value for the land. This is evident from the fact that it was then anticipated by the parties that it might sell for more at the judicial sale. The fact that it might sell for more is anticipated in the contract, and, in the event that it did sell for more, was to have some effect on the contract made. The learned counsel for the plaintiff and appellant contends that, in the event the lands sold for more than $2,000 at the public judicial sale, the plaintiff was released from all further liability on his contract, or, in other words, that his contract to sell the lands to the defendants was a conditional one; the condition being that he would sell the same to the defendants, or procure for them a title to the lands in case the land was sold at the judicial sale for $2,000 or less, and not otherwise. On the other hand, it is contended by the learned counsel for the defendants that the fact that it might sell for more than $2,000 had no effect upon the contract of sale. It seems to us that such a construction of the contract convicts the plaintiff of the want of not only ordinary prudence, but of any prudence. Had he owned the land to be sold, and was to receive for himself the consideration to be paid therefor, and for some reason he could not promptly give a title, and the consideration was paid down by the purchaser, there would be some reason for his assuming the risks of procuring the title, and agreeing to a large forfeiture if he failed to make good the title. But in this case he had no title. He did not receive any of the consideration down. The consideration he was to receive was not more than the fair value of the land and the amount he would probably have to pay for the same; and that con-

sideration was none of it to be paid until such time as he procured a good title for the defendants. Why, then, should he agree to forfeit $1,000 if he failed to procure the title unless he paid more for it than he was to get from the defendants? Such an agreement would be so one-sided and unfair that no man of ordinary prudence would make it, and we may fairly presume that the plaintiff did not intend to make such agreement in this case.

Does the language of the contract clearly show that the plaintiff did make such a contract? If it does, then he must be held to it, unless he can have it reformed so as to express what he intended. We think, as is admitted by the learned counsel for the respondents, that the language used is not so clearly in favor of the construction given to it by the defendants as to compel a court, notwithstanding its injustice, to give it that construction. We think that, standing as an independent contract for the sale of the Dunnett land, as we have said above it must stand, the construction sought to be put upon it by the defendants is not a fair construction of its language. If we construe it as contended for by the defendants, no effect is given to the following words of the contract, viz.: " And that in the event that said real estate, at its offer at public sale under such order, shall not bring over the sum of $2,000, the same shall be sold to said party of the second part for that sum, and they agree to pay said sum for the same." Now, if these words do not limit the right of the respondents to demand a conveyance of the lands only in case they shall not bring over the sum of $2,000 at the public sale contemplated, then they perform no purpose in the contract. The construction claimed by the respondents would have been better expressed if these words had been omitted. If the plaintiff had only been anxious to limit his liability for damages to $1,000, that would have been just as effectually done if the language of the contract above quoted had been wholly omit-

ted. By construing the contract as contended for by the respondents, one of the fundamental rules of construction is ignored, viz.: "That, in construing a contract, all of its terms must be considered." See 1 Chit. Cont. (11th Am. ed.), 117, and cases cited in note *y*. It is there said: "It is the most important of all the rules of construction that the whole of the agreement is to be considered; for, obviously, it cannot be the intention of the parties to an agreement with stipulations or qualifications, that some of them should be altogether disregarded and part of the agreement magnified into an equality with the whole, but, on the contrary, such a meaning is to be given to particular parts as will, without violence to the words, be consistent with all the rest, and with the evident object and intention of the contracting parties." *Plano Mfg. Co. v. Ellis*, 35 N. W. Rep. (Mich.), 841.

In the contract, previous to the language above quoted, the plaintiff had agreed to sell and convey this land to the defendants for the sum of $2,000, and to proceed with due diligence to procure a judicial sale of said lands, so that he could make such conveyance; and then the language above quoted is inserted, and in the clause quoted the defendants make the only promise anywhere made in the contract to pay the $2,000. Had it not been for the words at the commencement of the paragraph, "And further hath agreed to sell and convey that certain real estate . . . for the sum of $2,000," there would not be the least doubt as to the meaning of the contract. Had the contract read that, in consideration of the sum of $2,000 hereinafter agreed to be paid by the defendants, the plaintiff agrees to proceed with all due diligence to procure a judicial sale of the lands in question, "and that in the event," etc., as above quoted, there would be no doubt that the sale to the defendants would be upon the condition that it did not sell for more than $2,000 at such judicial sale. And in the contract as written the

words quoted must be entirely ignored as a part of the contract, or they must be construed to make the sale a conditional one, depending upon the fact that it could be purchased for the sum of $2,000 when publicly sold. We think this the only fair construction, and that it is not a strained construction. We think the language used in the contract may fairly be construed to mean that the plaintiff agrees to sell the land for the sum of $2,000 to the defendants; that he will proceed with due diligence to procure the title by a public sale thereof; and if at such public sale he can purchase the same for $2,000 or less, he will convey the same to the defendants, and not otherwise. This construction gives some effect to all parts of the contract, whereas the construction contended for by the defendants gives no meaning to the clause of the contract above quoted.

When the terms of a contract are indefinite, uncertain, and susceptible of two constructions, and by giving them one construction one of the parties would be subjected to a forfeiture, and by giving them the other no such forfeiture would be incurred and no injustice would be done to the other party, the contract should be so construed as not to create the forfeiture. We think this rule of law is clearly applicable to the contract set out in this case. See the following cases upon this rule: *Helme v. P. L. Ins. Co.* 61 Pa. St. 107; *Appleton Iron Co. v. B. A. Assurance Co.* 46 Wis. 23; *Badger v. Phœnix Ins. Co.* 49 Wis. 396; *Wier v. Simmons,* 55 Wis. 643; *Morse v. B. F. & M. Ins. Co.* 30 Wis. 540; *Clinton v. Hope Ins. Co.* 45 N. Y. 454; *Hoffman v. Ætna F. Ins. Co.* 32 N. Y. 405.

It is urged by the learned counsel for the respondents that the long delay of the plaintiff in bringing his action should be taken into consideration in determining the construction which the parties themselves put upon the contract. Possibly this fact might be considered if there had been a trial of the action upon the merits of the case, and

on such trial it had been shown that the plaintiff had never made any claim for the money he now seeks to recover until this action was commenced. In this case there has been no such trial; and it may be, as alleged by the learned counsel for the appellant, that on such trial he would be able to show that he made the claim promptly, and has constantly insisted upon it, and that the delay in bringing the action was attributable to other causes than a want of faith in the justice of his claim.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings according to law.

CASSODAY, J., took no part.