---

BATES COUNTY, MO., et al. v. WILLS et al.

(Circuit Court of Appeals, Eighth Circuit. September 21, 1911.)

No. 3,470.

1. DRAINS (§ 20*)—CONSTRUCTION OF MISSOURI STATUTE—NATURE OF DRAINAGE DISTRICTS—LIABILITY ON CONTRACTS.

Under the Missouri drainage act (Rev. St. 1899, § 8283, as amended by Laws 1905, p. 182), which authorizes the county court of a county, if on petition it shall find in favor of the improvement, to contract for the construction of a drainage ditch and to set apart the lands found to be benefited as a drainage district to be known by a number, such districts are merely political subdivisions of the county and not corporations capable of being sued, and a contract let by the engineer on behalf of the county for drainage work, as provided by the statute, is a special contract of the county, the work to be paid for by assessment on the lands of the district, and on which the county is alone suable.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 20.*]

2. DRAINS (§ 49*)—CONTRACT FOR CONSTRUCTION OF PUBLIC DRAINS—CONSTRUCTION.

A contract by a county for the construction of a public drainage ditch, made under statutory authority and based on specifications and a plat and profile made by an engineer, presumably contemplates the completion of the work to conform to the specifications, and where by such a contract the contractor was to be paid stated prices per cubic yard for the excavation, different on different sections. and a lump sum additional for the removal of coal, stone, and shale, and was required to remove all trees, stumps, and logs, the contract cannot be construed to exempt him from removing stone found in the line because of a further provision that he should execute the work with a steam dredge, without dressing the sides by hand, nor because that particular stone was not shown by the profile, which was not required by law to show the character of the material to be removed.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 49.*]

3. DRAINS (§ 49*)—CONTRACTS FOR CONSTRUCTION—PERFORMANCE—MODIFICATION.

Where the contractors under such contract on encountering the stone notified the county court that they did not consider it within their contract, a further agreement that they might proceed without prejudice to their right to insist on such claim or to the right of the county to contest it did not change the rights of the parties under the original contract, nor entitle the contractors, who left the stone in place, to recover the final payment for the work which by the terms of such contract was reserved until the contract should be fully performed.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 49.*]

4. DRAINS (§ 49*)—PERFORMANCE—CONDITION PRECEDENT TO RECOVERY ON CONTRACT FOR DRAIN—ENGINEER'S CERTIFICATE.

Where a contract for the construction of a public drain provided that final payment thereon should be made only on the estimates of the en-

gineer, to entitle the contractor to recover such payment, it must be both alleged and proved either that such estimate was made or that plaintiff had completed the work to entitle it to the same, and that the engineer had arbitrarily or fraudulently refused to make it.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 49.*]

In Error to the Circuit Court of the United States for the Western District of Missouri.

Action at law by A. V. Wills and others against Bates county, Mo., and others. Judgment for plaintiffs, and defendant county brings error. Reversed.

See, also, 170 Fed. 812.

Frank Hagerman (Thomas J. Smith, on the brief), for plaintiff in error.

F. N. Judson and Frank M. Lowe (William Mumford and Judson & Green, on the brief), for defendants in error.

Before HOOK, Circuit Judge, and RINER and WM. H. MUNGER, District Judges.

WM. H. MUNGER, District Judge. By statute of the state of Missouri the county court of any county in the state was given the power, at any regular session thereof, when the same should be conducive to the public health, convenience, or welfare, or where the same would be of public utility or benefit, to cause to be constructed ditches and drains within said county, when the same were necessary to drain any lot, lands, public or corporate roads or railroads. This power was to be exercised upon a petition filed with the county court by landowners whose lands were liable to be affected by assessment for the construction of the same. The county court was then to appoint commissioners, and an engineer to make a preliminary survey and report as to the advisability of the proposed ditch, and for the organization of the lands to be benefited into a drainage district, to be known by a given number. After such report, if the county court should find that the proposed ditch or other improvement was necessary for sanitary or agricultural purposes, or would be a public utility or conducive to the public health, convenience or welfare, it was required to make an entry of record of such finding and appoint some competent engineer and three viewers to establish the precise location of such ditch, make a survey and level, and set a stake at every one hundred feet, numbering downstream, determine the dimensions and form of the ditch or other improvement, estimate the number of cubic yards of earth or other substance to be removed, and the cost per cubic yard for each section of one hundred feet and for the whole work, and to make a report, profile, and plat of the same, such profile to show the surface, the grade line, and grade. They were also to return a schedule of all lots and lands and of public and corporate roads or railroads that would be benefited, damaged, or condemned by or for the improvement, the damage or benefit to each tract of 40 acres or less, etc. Upon the filing of the report of the viewers the county court was required to set a date for a hearing of the same, and no-

tice' was to be given to the parties affected of such hearing. · The county court was required to fix the time and place of letting contracts for the construction of the ditch according to the report of the engineer and viewers, and cause notice thereof, containing a description of the work to be let, to be given by the clerk of the court by publication, and the county court should cause the engineer to attend the sale and offer the work, receive the bids, and make contracts on behalf of the county with the lowest responsible bidder. and take bonds for the performance of·the work, no bid to be entertained which exceeded the estimated cost of location and construction of the work. The engineer was to return all contracts and bonds to the office of the county clerk, and the county court was then required to approve or reject such contracts and bonds.

Pursuant to these statutory provisions, drainage district No. 1 of Bates county, Mo., was organized, and on May 2, 1906, a contract was let by one Bell, the engineer, to Timothy Foohey & Sons for the construction of a ditch divided into three sections. The contract and the bond given by the contractors was subsequently approved by the county court.

The provisions of the contract material for proper consideration of this case were as follows:

"That in consideration of the covenants and agreements of the party of the first part hereafter mentioned to be kept and performed, the party of the second part covenants, promises, and agrees to and with said party of the first part to execute with a steam dredge, according to plans and profiles and specifications prepared by the engineer of said district and now on file in the office of the county clerk of Bates county, Missouri,· the following ditch, to wit: * * * The said ditches are to be executed with a steam dredge, the sides and slopes of said ditches not being required to be dressed to a smooth surface by hand work. The berme required in the specifications will be kept as nearly passable as the convenience and conditions of the ground will permit, but it is not expected to be kept clean from slush and the roll of the dredge. * * * All of said work to be completed according to plans and specifications, and under the direction and with the approval of the engineer in charge. * * *

"In consideration of the foregoing covenants and agreements of the party of the second part, the parties of the first part on behalf of said district hereby promise, covenant, and agree to pay to the party of the second part for the construction of said works the prices stated as follows, to wit:

"The sum of eight (8c) cents per cubic yard for all excavation in sections No. one and two (1 & 2) as shown on the plans and specifications aforesaid, and for the excavation in section three (3) shown on said plans and specifications ten (10) cents per cubic yard from Station No. 1012 to Station No. 1130, and also from Station No. 1174 to Station No. 1234 plus sixty feet. and the sum of twenty (20c) cents per cubic yard for excavating from Station No. 1130 to Station No. 1174, and in addition thereto for the removing of coal, stone, and shale the further sum of ten thousand eight hundred thirty-three dollars and thirty cents ($10,833.30) and for construction of laterals No. one and three (1 & 3) the sum of fifteen cents (15c) per cubic yard, and for lateral No. four (4) twelve (12) cents per cubic yard.

"Payments therefor shall be made on estimates made by said engineer who shall examine and measure the work done, and make such estimates monthly, and shall ascertain whether said work has been completed according to contract and his directions given for said construction, and, if the work shall be found to be deficient in any respect, said engineer shall at once give to the contractor notice, specifying the respect in which the ditch is deficient and direct such contractor, the party of the second part. to im-

mediately remedy such defect, and the engineer's estimate of the work done shall be withheld and no payment made thereon until such deficiency is remedied.

"If the work is found to be completed, or when any deficiency therein shall have been remedied as required by such engineer, he shall then give his estimate, and the county court of Bates county, Missouri, shall then accept said part of the ditch, and the contractor shall not be responsible for any defects that may occur after the time the same shall have been accepted, and, when any part of said ditch is accepted, the contractor shall then be paid in accordance with the terms of this contract for the work done up to that time, less ten per cent. (10%) of the contract price thereof which said ten per cent. shall be reserved until the final completion of all the work in each working section as given in the plans and specifications, aforesaid, at which time the whole amount due for work done upon each such section shall be immediately paid."

On the day of the execution of the contract Timothy Foohey & Sons assigned and transferred to A. V. Wills & Sons the portion of the contract relating to section No. 3, said A. V. Wills & Sons obligating themselves to perform the contract relative to section 3, and the work which was done upon said section 3 was performed by said A. V. Wills & Sons.

Separate estimates were made by the engineer of work done by said A. V. Wills & Sons as the same progressed to August, 1908, and 90 per cent. of the total amount was paid by the county court, 10 per cent. being reserved.

During the progress of the work and on the 6th day of August, 1908, the records of the county court show that said A. V. Wills & Sons stated to the county court that there was found in the land required to be excavated under the plans and specifications provided for the work a large amount of stone, which was not included nor covered by the terms of the contract, and that they could not, under their contract, remove the stone from said ditch as referred to under the contract so entered into. The record then recites as follows:

"And all the parties being desirous that the work not be delayed, and the said Timothy Foohey & Sons appearing herein and consenting hereto, it is by the court ordered that the said A. V. Wills & Sons may proceed with the execution of their work as heretofore done by them, and it is understood that in so doing they shall not be held nor taken to waive any right that they may now have to insist upon, or maintain that under the terms of the contract heretofore entered into they are not required to remove from the ditch stone that has been uncovered, nor such as may hereafter be uncovered, but their right, if any they have, shall be preserved to them, as it now exists, to claim or maintain that they are not obligated by the terms of the contract to remove from said ditch the stone complained of.

"It is understood, however, by all the parties the county court of Bates county, Mo., acting in this behalf for said drainage district, the said A. V. Wills & Sons and the said Timothy Foohey & Sons that the said county court does not concede the correctness of the claim thus made by the said A. V. Wills & Sons in any respect, but expressly reserve whatever right it may have to insist upon the removal down to the grade line of all materials that may be found in or under the earth excavation as provided by the plans and specifications for the execution of said work, the sole and only purpose of this entry being to provide that the further prosecution of work in said ditch by the said A. V. Wills & Sons as has been done heretofore. or shall hereafter be done, shall not be taken or held of itself as a waiver upon their part of any rights which they now have, either to refuse to remove the stone from said ditch, or to abandon the work at this point."

Thereafter A. V. Wills· & Sons proceeded with the work and removed all the material from the ditch excepting the stone, which they insisted they were not required to remove, the county court insisting that they were required, under the terms of the contract, to remove the same.

On April 3, 1909, A. V. Wills & Sons brought action in the Circuit Court of the United States against Bates County and Drainage District No. 1 to recover the sum of $58,000, which they claimed was the balance due them for the work done. In their petition it is stated that they have performed all the work which was required to be done under their contract, being all which could be removed with a steam shovel, stating and claiming in said petition that the profile referred to in the contract showed the stone in the ditch to be of a character, and located so, that it could be removed by a steam shovel, but that the stone actually contained in the ditch was of a kind and character which could not be removed with a steam shovel. and hence, under the terms of the contract, was not required to be removed by them.

A demurrer was sustained to the petition on behalf of the drainage district. Bates county filed an answer, denying its liability, and further claiming that the contract required the contractor to remove all of the material, including stone, from the ditch, in accordance with the plans and specifications, which had not been done, and that the plaintiffs had not completed their contract, alleged that the engineer had not given any estimates for work not paid for.

At the trial but little evidence was offered, for the reason that the trial court expressed the view that the agreement of August 6, 1908, constituted a new contract which entitled plaintiffs to recover the full amount of the balance due for the work which they had performed, and directed a verdict in favor of plaintiffs and against the county for that amount.

[1] The first contention made here upon the part of the county is that it in no manner is liable upon the contract, that the contract was not one made by the county for and on its behalf, but was a contract of the drainage district, and that the drainage district alone is liable. Viewing the legislation of the state relative to these drainage districts, we think it apparent that drainage districts were merely political subdivisions of the county for the special purposes of drainage. and were· not at the time the contract was entered into created corporations capable of suing and being sued. The whole proceeding for the establishment of drainage districts, construction of ditches, assessing property therefor, and providing the funds to pay for construction, was vested in the county court. The statute expressly required that the engineer should make the contract for and on behalf of the county.

We think it apparent that the contract in question was a special contract of the county, differing from its general contracts, in that the funds for the payment of the enterprise were to be collected from the portion of the county only that derived special benefit from the improvement; that the district formation was for the purpose of designating the territorial part of the county to be assessed for the

payment thereof. Contracts of this character are analogous to those of a city, which establishes paving and sewer districts, issues paving and sewer district bonds, in which the real estate in the particular district only is assessed for the improvement, the work being done on the theory that it is a local benefit, and the expense borne by the property specially benefited. That the contract in question was a special county contract and the action properly brought against the county we think sustained by the case of Davenport v. County of Dodge, 105 U. S. 237, 26 L. Ed. 1018.

[2] The main controversy in the case arises over the proper construction of the contract in question. Plaintiffs claim that, as the contract provided for the work to be done with a steam dredge, they were only to remove such material as could be removed with a steam dredge; that material and obstructions which could not be removed with a steam dredge were not embraced within the contract. On the part of the defendant it is said that the contract considered as a whole was for a completed ditch according to the plans and specifications.

In Turner v. City of Fremont (C. C.) 159 Fed. 221 (affirmed in 170 Fed. 259, 95 C. C. A. 455), it was said:

"It is fundamental that the primary object of construction in contract law is to discover the intention of the parties. To do this, the entire agreement is to be considered. Not what separate parts may mean, but what the agreement means when considered as a whole, and, if possible, the agreement should be construed so as to give effect to each provision inserted therein."

In Pressed Steel Car Co. v. Eastern Ry. Co. of Minn., 121 Fed. 609, 57 C. C. A. 635, certain canons of interpretation of contracts were stated by Judge Sanborn, writing the opinion of this court as follows:

"The purpose of a written agreement is to evidence the terms upon which the minds of the parties to it meet when they make it. Hence the true end of all contractual interpretation is to ascertain that intention, and, when it is found, it prevails over verbal inaccuracies, inapt expressions, and the dry words of the stipulations. The court should, as far as possible, put itself in the place of the parties when their minds met upon the terms of the agreement, and then, from a consideration of the writing itself, its purpose, and the circumstances which conditioned its making, endeavor to ascertain what they intended to agree to do—upon what sense or meaning of the terms they used their minds actually met. Accumulator Co. v. Dubuque St. Ry. Co., 64 Fed. 70, 74, 12 C. C. A. 37, 41, 42; City of Salt Lake v. Smith, 104 Fed. 457, 462, 43 C. C. A. 637, 643; Fitzgerald v. First National Bank, 52 C. C. A. 276, 284, 114 Fed. 474, 482. The intention of the parties must be deduced from the entire agreement and from all its provisions considered together, because, where a contract has many stipulations, it is plain that the parties understood and agreed that their intention was not expressed by any single part or provision of their agreement, but by every part and stipulation so construed as to be consistent with every other part and with the entire contract. Jacobs v. Spalding, 71 Wis. 177, 189, 36 N. W. 608; Boardman v. Reed, 6 Pet. 328, 8 L. Ed. 415; Canal Co. v. Hill, 15 Wall. 94, 21 L. Ed. 64; O'Brien v. Miller, 168 U. S. 287, 297, 18 Sup. Ct. 140, 42 L. Ed. 469. Where the language of an agreement is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that the contract is fairly susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable agreement must be preferred to that which makes it an unusual, unfair, or improbable contract. Coghlan v. Stet-

son (C. C.) 19 Fed. 727, 729; Jacobs v. Spalding, 71 Wis. 177, 186, 36 N. W. 608; Russell v. Allerton, 108 N. Y. 288, 292, 15 N. E. 391."

Applying the foregoing rules of construction to the contract in question, it is clear that the parties had under consideration the construction of a drainage ditch in accordance with certain plans and specifications. Such plans and specifications were for a completed ditch of specified dimensions, and provided for the removal of all of the material therefrom. One provision in the specifications was as follows:

"All trees, stumps, logs or other obstructions that come within the cross-sectional area of the ditch and on specified bermes must be removed and any other such on the right of way that may present an obstruction to the proper execution of the work or effect its beneficial results in the future."

We do not think it would be seriously contended that if some portion of the section was covered by large trees, which could not be removed by a steam shovel, such portion was not covered by the contract because of the provision that the work was to be done with a steam shovel. That such was not plaintiffs' understanding is evident from the fact that it appears from the evidence that some trees they dug out with a machine and others with the brush they chopped off.

The statute required the viewers and engineer, not only to present specifications, but a plat and profile of the work, with an estimate of the amount of material which would be required to be removed and the cost thereof. The purpose of this was primarily to enable the county court to obtain at least a reasonably approximate estimate of the cost of the work. The several soundings appearing upon the profile, showing the character of the material, were not required by the statute, but were doubtless made in this case to furnish evidence to the county court as to the probable correctness of the estimated cost. The profile was not a representation or guaranty upon the part of the county that all of the material in the ditch consisted of such as was shown at the points where the soundings were made. Sanitary Dist. v. Ricker, 91 Fed. 833, 34 C. C. A. 91. That the character of the material to be removed would vary is clearly shown by the fact that the price per cubic yard for excavation varied from 10 to 20 cents, and that it was contemplated and understood by the parties that it would be necessary to remove coal, stone, and shale, is made evident by the fact that the contract provided that, in addition to the price paid per cubic yard, a lump sum of $10,833.30 should be paid for removing stone and shale. The object and purpose of the contract being to obtain a completed ditch, according to plans and specifications, it is apparent that the provision relative to the work being done by a steam shovel was only intended to expedite the work, relieve the contractor from smoothing the sloped surfaces by hand, and that the steam shovel was only to be used to the extent that it was practicable to perform the work required. Reading the contract as a whole, we conclude that it provided for the removal of all material within the dimensions shown by the specifications.

[3]. The subsequent agreement of August 6, 1908, did not modify the contract in these respects. It had developed that there was stone

in the ditch to be excavated, which could not be done with a steam shovel, and plaintiffs promptly reported to the county court that such work was not within their contract. This was doubtless done to avoid any question of waiver which might possibly arise if they continued to simply remove such material as could be done with the steam shovel; that the work should not be delayed, the parties simply agreed that the work should continue as before; that such continuation should not operate as a waiver of the rights of either party; that the question as to whether or not the stone within the ditch was to be removed under the contract would be left open for final adjustment, unaffected by the act of the contractor in continuing with the work. By continuing the work A. V. Wills & Sons were entitled to receive from the engineer monthly estimates of the work as it progressed and to receive 90 per cent. of the pay therefor. They were not entitled to pay for the full amount of the material which they removed, but only 90 per cent. thereof. The remaining 10 per cent. they were not entitled to receive until the entire work in the section was completed. The judgment in this case awarded them the entire amount, and to the extent that it exceeded 90 per cent. was clearly erroneous.

Plaintiffs have cited authorities in support of the proposition that the impossibility of removing the stone from the ditch with a steam dredge excused plaintiffs from taking it out. Among the cases cited is that of Kinzer Construction Co. v. State (Ct. Cl.) 125 N. Y. Supp. 46. That case announces four grounds upon which parties may be relieved from their contract obligations: (1) Where the legal impossibility arises from a change in the law. (2) Where the specific thing which is essential to the performance of the contract is destroyed. (3) Where, by sickness or death, personal services become impossible. (4) Where conditions essential to performance do not exist. This case does not fall within any of the above exceptions. There was no change in the law which rendered it impossible to perform the contract. There was no destruction of the specific thing essential to performance. It is not a case where personal services were required, the rendition of which became impossible by reason of sickness or death. Nor do we think there were conditions essential to performance which did not exist. This latter could only be based upon the theory that the proper construction of the contract called for the removal of only such material as could be removed by a steam dredge. But, as stated, such is not our view of the contract.

Again, it is urged, and authorities cited in support of the proposition, that an exhaustion of the funds provided for the payment of the work justified plaintiffs in failing to complete the same. This position is not well taken, for plaintiffs only claimed in their petition that the sum of $58,000 was due them, and it was alleged that there was $74,000 applicable to its payment. The evidence does not show that the fund applicable for the payment was exhausted or was insufficient to pay for the completion of the work. As plaintiffs did not fully perform and complete their contract, they are only entitled to recover 90 per cent. of the amount due for the work which they did perform in accordance with the contract. If the county has sustained

190 F.—34

any damage by reason of the nonfulfillment of the contract, which would reduce this amount, it should be set up as a counterclaim.

[4] A fatal defect to plaintiffs' right to recover at all consists in the fact that the contract provided that payments were to be made only upon estimates of the engineer; and, while it is true that a will-ful failure or refusal of the engineer to give estimates would not defeat their right to recover, yet it was incumbent upon plaintiffs to plead and show either that estimates had been made by the engineer or that work had been done in accordance with the contract and a failure or refusal of the engineer to give estimates. There is no allegation in the petition either that estimates were given of the work in question or of a failure or refusal on the part of the engineer to give such estimates. It is true that plaintiffs' testimony shows that a request was made for estimates and the engineer refused to give them, he giving as a reason for such refusal that the county court had directed him not to give further estimates. Testimony, however, is admissible only as it tends to support some issue made by the pleadings. As there was no such issue tendered by the petition, this evidence was wholly immaterial, and cannot be considered. Cucullu v. Hernandez, 103 U. S. 105–116, 26 L. Ed. 322. As the case, however, must be remanded for a new trial, this defect in the pleading may possibly be cured by amendment.

For the foregoing reasons, the judgment is reversed, with directions to grant a new trial.