RUSHING et al. v. MANHATTAN LIFE INS. CO. OF NEW YORK.

(Circuit Court of Appeals, Eighth Circuit. May 12, 1915.)

No. 4204.

*(Syllabus by the Court.)*

1. CONTRACTS ☞153, 162—CONSTRUCTION—VALIDITY—INCONSISTENT PROVISIONS.

Every part of a contract must be so construed, if possible, as to be consistent with every other part and effective. It is only when parts of a contract are so radically repugnant that there is no rational interpretation that will render them effective and accordant that any part must perish.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 734, 744; Dec. Dig. ☞153, 162.]

2. INSURANCE ☞175—LIFE INSURANCE POLICY—CONSTRUCTION.

The true meaning of the provisions of a policy of insurance signed by the officers of the company June 19, 1903, "that there shall be no contract of insurance until a policy shall have been issued by the company and manually received and accepted * * * during the good health of the person whose life is to be insured," and that "this policy is to date from June 1, 1903," is that there shall be no contract of insurance until and unless the policy is manually delivered to and accepted by the insured during his good health, and that if it is so delivered the term of insurance and the time of payment of the premiums shall be reckoned from June 1, 1903.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 362–371; Dec. Dig. ☞175.]

3. CONTRACTS ☞24—PROPOSAL—ACCEPTANCE—MODIFICATION.

The material modification of the terms of a proposal of a contract by the party to whom it is offered is a rejection of the proposal and the tender of a new offer, which cannot become a contract until it has become known to and has been accepted by the first proposer.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 100–103; Dec. Dig. ☞24.]

In Error to the District Court of the United States for the Eastern District of Oklahoma; John C. Pollock, Judge.

Action by G. M. Rushing and another, administrators of the estate of M. D. Sowell, deceased, against the Manhattan Life Insurance Company of New York. Judgment for defendant, and plaintiffs bring error. Affirmed.

Marcus M. Parks, of Dallas, Tex. (Charles A. Cook, of Muskogee, Okl., on the brief), for plaintiffs in error.

Harry L. Seay and Lee Richardson, both of Dallas, Tex., and B. Broaddus, of Muskogee, Okl. (Samford, Rapallo & Kennedy, of New York City, on the brief), for defendant in error.

Before SANBORN and SMITH, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. This is a writ of error to reverse a judgment in favor of the insurance company in an action on a policy upon the life of M. D. Sowell. The case was tried by a jury, and it is specified as error that the court, at the close of the trial, directed a verdict for the insurance company upon the facts proved, on the ground that the company never made the alleged contract of insurance. Those facts were these:

On June 1, 1903, M. D. Sowell made a written application to the company for a policy of insurance on his life for $10,000, gave it to the local agent of the company, deposited with him $550, the amount of the first annual premium, and took a receipt therefor, to the effect that this deposit should be applied on account of the first premium if the application should be accepted by the company and a policy should be issued and delivered in accordance with the terms of the application, but that otherwise the $550 should be returned to the applicant upon the surrender of the receipt. One of the terms of the application was:

"It is expressly agreed as follows, viz.: (1) That there shall be no contract of insurance until a policy shall have been issued by the company and manually received and accepted, subject to the conditions therein and herein contained, during the good health of the person whose life is to be insured, and the first premium paid."

The application, which was taken by the local agent in the Indian Territory, was forwarded to the home office of the company in New York. On the 18th day of June, 1903, the company made and signed a printed policy of insurance on this application which contained these words in writing, "This policy is to date from June 1, 1903," and mailed the policy to its general agent at Dallas, Tex., A. A. Green, who had authority, in the absence of special instructions, to deliver, or to refuse to deliver, the policy as he thought right and proper. On June 19, 1903, the company was informed that Mr. Sowell was not in good health, and it telegraphed and wrote to Mr. Green to hold the policy until he got well, and, if he failed to do so, to return it for cancellation. Green obeyed these instructions. The policy was never presented to, accepted by, or delivered to Mr. Sowell, who died on June 29, 1903.

[1, 2] Counsel for the plaintiffs below concede that the agreement of the parties "that there shall be no contract of insurance until a

policy shall have been issued by the company and manually received and accepted subject to the conditions therein and herein [in the application] contained during the good health of the person whose life is to be insured," was one of the terms of the application and of the policy, and that the policy never was manually received or accepted by Mr. Sowell during his good health, or at all. They contend, however, that this stipulation of the contract was abrogated by the facts that it was in print, while the provision that "this policy is to date from June 1, 1903," was in writing, and that one of the rules for the construction of contracts is that, where the printed and the written provision thereof are in conflict, the writing prevails, that the policy also contained these words:

"It is expressly stipulated that this contract is made and to be performed in the state of New York, and shall be in all respects construed and controlled by the laws of said state. In witness whereof, the Manhattan Life Insurance Company has hereunto affixed its corporate seal, and by its president and secretary signed and delivered this contract at the city of New York, this eighteenth day of June, one thousand nine hundred and three"

—and that these terms are repugnant to the stipulation that there should be no contract until the policy was manually delivered to and accepted by the insured while he was in good health. If the fact were established that the receipt, the application, and the policy constitute a contract of insurance between the parties, these arguments might be pertinent to the interpretation of that agreement. But they would not even then be unanswerable. The sole purpose of the interpretation of a contract is to ascertain the intention of the parties when they made it. If possible, every part of a contract must be so construed as to be consistent with every other part and to have effect. It is only when the parts of a contract are so radically repugnant that there is no rational construction that will render them effective and accordant that any part must perish. And the intention of the parties must be deduced, not from specific provisions or fragmentary parts of the agreement, but from the entire contract, because the intent is not evidenced by any part or stipulation of it, nor by the contract without any part or provision, but by every part and term so construed, if possible, as to be consistent with every other part and with the entire agreement. American Bonding Co. v. Pueblo Inv. Co., 150 Fed. 17, 27, 80 C. C. A. 97, 107, 9 L. R. A. (N. S.) 557, 10 Ann. Cas. 357; Jacobs v. Spalding, 71 Wis. 177, 188, 36 N. W. 608; Boardman v. Reed, 6 Pet. 328, 8 L. Ed. 415; Canal Co. v. Hill, 15 Wall. 94, 21 L. Ed. 64; O'Brien v. Miller, 168 U. S. 287, 297, 18 Sup. Ct. 140, 42 L. Ed. 469; Pressed Steel Car Co. v. Eastern Ry. Co., 57 C. C. A. 635, 637, 121 Fed. 609, 611; Uinta Tunnel, etc., Co. v. Ajax Gold Min. Co., 141 Fed. 563, 73 C. C. A. 35; U. S. Fidelity & G. Co. v. Board of Com'rs, 145 Fed. 144, 148, 76 C. C. A. 114, 118.

The court below deduced from the receipt, the application, and the policy the intention of the parties that there should be no contract of insurance until the policy was manually delivered to and accepted by the assured during his good health. Counsel for the plaintiffs below argue that these instruments disclose the intention of the parties to agree that a contract of insurance was made between them on June

1, 1903, when the receipt was issued, and this because the ninth provision of the policy is in writing and reads, "This policy is to date from June 1, 1903." But there are two permissible interpretations of that provision, warranted by its terms and by its common use—one that it specifies the date from which the term of insurance and the premiums shall be reckoned if the policy becomes a contract, and the other that it fixes the date when the minds of the parties met on the terms of their agreement and the policy became a contract. It is a practice so common as to be within judicial cognizance to make promissory notes, deeds, mortgages, policies of insurance, and contracts of many kinds date from their own dates, or from specific dates named therein, which are generally a few days earlier than the dates when by execution and delivery they actually become agreements, and an interpretation in accordance with this practice of the provision in question makes it consistent with the receipt of June 1, 1903, the application, and the policy, all of which expressly condition the existence of the contract of insurance and fix the time when it shall come into existence by the manual receipt and acceptance by the insured of the policy while he is in good health.

This construction also makes the provision consistent with the formal statement in the policy that it is signed, sealed, and delivered in New York on June 18, 1903. On the other hand, the theory that the intention of the parties was to evidence by this provision the making of the contract of insurance between them on June 1, 1903, is inconsistent with all the other terms of the writings which have been specified and contrary to the actual fact. The result is that the interpretation of the agreement that there should be no contract of insurance unless nor until the policy was manually delivered and accepted by the insured while in good health; but, if such a contract were so made, it should date, and the term of insurance and times of payment of annual premium should be reckoned, from June 1, 1903, is rational, in accordance with a quite general practice, renders all the provisions of the contract consistent and effective, and declares the true intention of the parties to the agreement, while the construction adopted by counsel for the plaintiffs below renders some of the terms of the agreement unnecessarily repugnant and the abrogation of some of them unavoidable. So it is that under familiar canons of interpretation the former is the only permissible construction.

The considerations to which reference has now been made also deprive of persuasive force the contention of counsel that the insertion in writing of the provision that "this policy is to date from June 1, 1903," constituted an agreement of the parties to waive the stipulation that there should be no contract of insurance until a policy was manually delivered and accepted by the insured during his good health. As the former provision was susceptible of a rational and customary interpretation which rendered it effective and consistent with the latter, they must both stand, be read, and be given effect together, and neither was waived nor abrogated.

The case has thus far been discussed upon the hypothesis that the question in it is the true construction of a contract between Sowell

and the company, evidenced by the receipt, the application, and the policy. But that is not the real issue. The crucial question is: Was there ever any contract of insurace between these parties? Did their minds ever meet and agree upon the same terms of any contract of insurance? Sowell, on June 1, 1903, proposed to the insurance company to take a policy of insurance on the terms expressed in his application that the policy to be issued under it and the negotiations for it should constitute no contract of insurance unless the policy was manually delivered to and accepted by him while he was in good health. The company signed, sealed, and mailed to its general agent in Texas a policy which in its printed part expressly stipulated that these terms proposed in the application were made a part of the terms of the policy. But the company inserted in the policy in writing the provision that "this policy is to date from June 1, 1903," and counsel for the plaintiffs stake their right to recover on the position that this insertion was so inconsistent with the provision of the application and the policy that there should be no contract of insurance until and unless the policy was manually received and accepted by the insured during his good health that it abrogated or waived that provision.

[3] But if that position is well taken, if the written stipulation was so inconsistent with the latter provision that it abrogated or waived it, then the policy was not an acceptance of Sowell's offer, but so radically modified his proposition that it was a rejection thereof, and the offer of a new proposal, which the insured never received or accepted, so that the minds of the parties never met upon it. The material modification of the terms of a proposal of a contract by the party to whom it is offered is a rejection of the proposal and the tender of a new offer, which cannot become a contract until it has become known to and has been accepted by the first proposer. McNicol v. New York Life Ins. Co., 149 Fed. 141, 143, 79 C. C. A. 11, 13; Mohrstadt v. Mutual Life Ins. Co., 115 Fed. 81, 83, 52 C. C. A. 675, 677; Travis v. Nederland Life Ins. Co., 104 Fed. 486, 488, 43 C. C. A. 653, 655. If, on the other hand, the written stipulation was not so inconsistent with the provision that there should be no contract until nor unless the policy was manually delivered to and accepted by the insured in good health as to waive or abrogate it, then that stipulation governed the negotiations and conditioned the existence of the contract of insurance and the time of its making, and as the policy never was received or accepted by the insured in good health, or at all, there never was any contract of insurance between these parties. In either case no contract of insurance was ever made, and there was no error in the court's instruction to the jury to return a verdict for the company.

This conclusion renders the consideration of other alleged errors at the trial unnecessary, and the judgment below must be affirmed.

It is so ordered.