JOHN W. TUTHILL LUMBER COMPANY, Respondent, v. WILLARD McMACKIN et al., (County of McCook, Appellant.)

(138 N. W. 959.)

**Drains—Subcontractor's Lien for Materials—Statutes.**

Under Code Civ. Proc., Secs. 713-721, providing for liens to subcontractors, section 713 thereof providing for a lien on money in county's control due the contractor, in favor of a material-man to a contractor, and Sec. 21, limiting that article to materials furnished to county's contractor for improvements on streets, etc., and to land the title to which is in county, etc., held, that a material-man who furnished materials to a contractor in construction of a drainage ditch under Laws 1907, ch. 134, as amended by Laws 1909, ch. 102, is not entitled to a lien on funds of county due to such contractor.

Smith, J., concurring specially.

Corson and Haney, J. J., dissenting.

(Opinion filed Dec. 3, 1912. Rehearing granted Feb. 19, 1913.)

Appeal from Circuit Court, McCook County. Hon. JOSEPH W. JONES, Judge.

Action by the John W. Tuthill Lumber Company, a corporation, against Willard McMackin for a money judgment, and against the County of McCook to enforce a mechanic's lien upon a fund alleged to be due from the county to defendant McMackin as contractor. From a judgment against defendant county, rendered upon overruling its demurrer to the complaint, the county appeals. Reversed.

*E. H. Wilson* and *M. A. Butterfield,* for Appellant.

The law which is now before the Court for construction was passed in 1895 and is Chapter 133 of the Session Laws of 1895. The title of the bill as passed by the Legislature and which it still retains in the Session Laws is; "Relating to Mechanics Liens." "An act relating to Liens in favor of persons furnishing labor, or materials to contractors for public work for County, Municipal or Public School Corporations." Under the well known Constitutional provision that "no law shall embrace more than one subject which shall be expressed in its title," it seems very clear that this law applies only to those furnishing labor or material for contractors for public work for County, Etc. The question then arises, is a drainage ditch constructed under the provisions of Chapter 134 of the Laws of 1907, as amended by Chapter 102 of the Laws of 1909, a public work for the County within the meaning of the mechanic lien law under which this action was brought? Section 713 to Section 721 inclusive of the present Code of Civil Procedure are practically identical with Chapter 133 Session Laws of 1895, same being incorporated into the Code; the only difference being that wherever the words "This Act" occur in the Session Law it is changed to "This Article" in the Code, the word "of" is changed to "or" in the third line of Section 716, the word "such" is inserted in line one of Section 718, and the word "or" is changed to "and" in the second line of Section 721, all of which changes are wholly immaterial. The law itself bears out the belief very clearly, that it applies only in cases of public works belonging to the County or other Municipal or Public School Corporation. Section 713, Code of Civil Procedure. A careful reading of the law itself, considered with the title of the bill, as

it was when passed by the legislature, and considering the further fact that the law was passed several years before South Dakota had any drainage laws at all, seems to lead to the irresistible conclusion that the law was intended to apply and does apply in cases: only, First where the contract is for some public work for the County, Etc., and Second where the construction or repair is of some improvement owned by the County, Etc. Third upon a street public highway, or public ground or upon land the title to which is in the County, Etc. Fourth for the purpose of paying same an appropriation of the funds of such corporation shall have been, or hereafter shall be made. No facts are alleged in the complaint bringing this case within any of the foregoing requirements, and in fact, it appears from the complaint, that none of these conditions do exist, hence defendant County the appellant herein urges that as to it, no cause of action is stated in the complaint and the complaint wholly fails to state facts sufficient to entitle it to a lien under the sections of the law upon which the action is based or to entitle it to foreclose such lien. The appellant further contends that the allegations in the complaint show that the Court has no authority to enter such a judgment against the appellant County as is asked for in the plaintiff's prayer for judgment.

A strict construction of statutes conferring a mechanic's lien should be made to determine whether a lien attaches. After it has attached a liberal construction should be given. Godfrey Lumber Company v. Kline 133, N. W. 528. 2nd Jones on Liens No. 1554.

The contract set out in the complaint is only made by the County Commissioners as ex-officio agents of the owners of lands benefitted by the drainage ditch and in no way binds the appellant County as a municipal corporation. The law does not require and in fact does not authorize, the contract to be made with the County. See Section 6 of Chapter 102, Laws of 1909 amending Section 8 of Chapter 134 Laws of 1907. The contract might have been with the County Auditor, or with the Board of County Commissioners, and the law complied with as well as though it were made with the county. Paragraph 8 of the complaint alleges that in furnishing defendant McMackin with the tile, plaintiff relied on the contract made and entered into between de-

fendant McMackin and the appellant County. (Folio 44). The contract (Folio 31) provides that all payments shall be made by assessment certificates or drainage warrants, which shall be accepted as cash.    Folio 28, the complaint alleges that 25 per cent shall be retained by second party till the work is completed, etc., and same has been accepted by the board of County Commissioners. At folio 29 the complaint alleges "And final payment shall not be made of the 25 per cent kept back until receipted bills are filed in the office of the County Auditor showing all labor, etc., paid for. The complaint does not allege that all bills for labor and material except its own have been paid for and receipted bills for same filed with the County Auditor, neither does it offer to file a receipted bill for the material it sold the defendant McMackin, if the drainage warrant is issued to it by the County Auditor as demanded in its prayer for judgment.    At folio 25 the complaint gives a part of the contract (upon which plaintiff avers it relied in selling the tile to McMakin) which reads as follows, "the first party (McMakin) shall not sublet any part of the work in such a manner that he will not be personally responsible, nor will any other party be recognized in the payment of or the settlement for the job."    If plaintiff, as it alleges in its complaint, relied upon the contract which was set out in the complaint it must have relied on that part just quoted, as well as other parts and plaintiff cannot ask to be substituted for McMackin in the settlement for the ditch.    The law under which this action is   commenced and under which the pretended lien is filed does not authorize the creditors of a contractor to secure payments for materials or labor by filing a lien upon drainage warrants, as assessment certificates.    The law only allows a lien upon moneys and the complaint cannot be prepared so as to enable plaintiff to hold and foreclose a mechanic's lien upon drainage warrants or assessment certificates that are agreed by parties to a contract to be accepted the same as cash nor will the law permit the Courts to make a new contract between the parties, in direct opposition to that already made, so that drainage warrants may be issued to the contractor's creditors instead of to the contractor on final settlement in direct violation of their own written contract.

*Aikens & Judge,* for Respondent.

That the scope of section 713, Code Civ. Proc. is in no manner abridged by the terms of 721 is quite clear.

We are well aware of the principle of statutory construction to the effect that where a general provision of a statute is followed by a specific one, the two being inconsistent, the specific provision governs, but this rule is subordinate to the greater principle that statutes are to be so constructed, if possible, as to give full effect to all their parts.

There is no consistency between the provisions of Secs. 713 and 721. It is evident that the intention of the legislature in passing Sec. 721 was principally to make the entire article retroactive in its application to certain specified cases, and the mere fact that in attempting to create such retroactive effect, the section was also made to apply to similar future cases and contracts could in no manner be held to show an intention to modify, as to such future contracts, the general provisions of Sec. 713. In fact the use of the word "include" in Sec. 721 indicates to us that that section, in so far as it affects future cases and contracts, was adopted from an excess of caution in order that there might be no possible question about the application of the statute to the particular cases therein specified.

These two principles of statutory construction are ably discussed in Ah Hoy v. Spencer, 31 Pacific (Oregon) 220.

We have discussed briefly the question of the construction of the statutes upon which we rely, not because we are fearful of the application of the provisions of Sec. 721 to this case, but because we by no means concede that it is necessary to bring ourselves within the purview of the latter section.

We believe that careful consideration of the provisions of our drainage law as embraced in Chapters 134 of the Session Laws of 1907 and 102 of the Session Laws of 1909 will convince the Court that the construction of a drainage ditch is the construction of a public work or improvement for a county either upon public ground or upon land the title to which vests in the county by purchase or condemnation proceedings as provided for by the statutes, and that the strictest possible construction of the mechanics lien law as against respondent will of necessity uphold its lien.

Is it a public work or improvement? What is the first fact

to be determined by the board of county commissioners after the consideration of a petition for a ditch? "When the board of county commissioners shall have heard and considered said petition and all matters in opposition to or in support of the same, they shall if they find the proposed drainage not conducive to the public health, convenience or welfare  *  *  *  deny said petition  *  *  *  *. If they find the drainage proposed or any variation conducive to the public health, convenience or welfare  *  *  *  they shall establish the drainage  *  *  *." (Section 5, Chapter 134 Laws of 1907, and Section 3, Chapter 102, Laws of 1909). It is further provided that the survey "may extend to other lands than those affected by the proposed drainage for the purpose of determining the best practical method of draining the entire section of country of which the lands proposed to be drained or a portion of them are a part," and that "the county commissioners, surveyors or their employes may enter upon any lands traversed by the proposed drainage or in their judgment likely to be affected thereby," and that for the purpose of constructing ditches lands may be condemned.

The only theory upon which such laws may be upheld and powers granted is that they provide for public work—work for the benefit and welfare of the public at large. If this be not true, the acts referred to must necessarily be unconstitutional.

A drainage district so-called is not a legal entity; it may not sue or be sued; it is not capable of contracting; it has no existence in law except as a tract of land whose boundaries are fixed by the action of the county commissioners in determining the necessary scope and extent of the particular ditch affecting it; it cannot be the principal for whom the commissioners act; they do not act for the petitioners because they are the trial body before whom the issues raised by the petitions are heard and by whom they are determined.

The entire business is transacted by county officers; the petition is filed with the county auditor; surveys are made by the county commissioners and surveyors; the assessments are certified by the ocunty auditor and filed with the county treasurer; their collection is enforced by sale of the property by the county treasurer at the time of the annual sale for general taxes. The transaction differs from the ordinary business of the county only

because the county does not become generally liable; its only duty is to properly collect and disburse the special fund derived from the assessment of the property within the so-called drainage district. Appropriations are not made from the general funds of the county for the purpose of constructing ditches but are made from the special funds which may be used by the county for no other purpose.

Section 15 of Chapter 134 of the Laws of 1907 provides for the issuing of bonds for the purpose of defraying expenses incurred in obtaining rights of way, etc. If the county is in no manner interested in and is not a party to the drainage proceedings, why was it deemed necessary by the legislators to provide that "No county shall be liable for the payment of any bonds issued under this act but such bonds shall be paid only out of funds derived by the special assessment herein provided for." Why was it necessary to expressly nagative any liability of the county upon the bonds if, as contended by appellant, it is not a participant in any of the drainage ditch matters? Bates County v. Mills, 190 Fed. Rep. 522.

That the contract in question was a special county contract and the action properly brought against the county we think sustained by the case of Davenport v. County of Dodge, 105 U. S. 237, 26 L. Ed. 1018." (See also opinion of District Judge Philips S. C. 170 Fed. Rep. 812).

If the ditch constructed by the defendant, McMackin, was a public work for the county, the complaint in our opinion states facts sufficient to sustain plaintiff's claim of a lien under the provisions of Sec. 713 supra, but let us go a step further and see if the case is not also one especially referred to by Sec. 721. Is the construction of a public drainage ditch an improvement upon public ground or upon any land the title to which is acquired by the county? Again the statute is silent and the question may only be answered by inference. Section 3 of the Act of 1909, amending Sec. 5 of the Act of 1907, provides that the commissioners "shall assess the damages sustained by each tract of land or other property through which the same shall pass and the damages as compensation for the land taken for the route of such drainage," and further that failure to appear and contest the award

of damages shall be "a waiver of any of such damages or compensation for land taken."

Section 25 of the Act of 1907 is as follows: "The title to the right of way of drainage may be derived by consent or purchase from the owners of the lands through which the same may pass as well as by the method of condemnation herein provided," showing conclusively that by the condemnation proceedings above referred to the title to that portion of each tract of land occupied by the ditch passes from its owner. Who acquires such title? The only possible answer is that it is acquired by the county. There is no other legal entity to which it could pass. The title to the ditch is in the county and the ditch is public ground.

The remaining condition of § 721 is "for the purpose of which any appropriation of the funds of such corporation shall have been or shall hereafter be made or raised by such corporation." A special fund is raised by special assessment for the construction of each ditch and this fund is appropriated by law for the payment of the cost of such construction.

The law provides for a lien upon "all moneys in the control of such corporation due or to become due under such a contract." The certificates of assessments or warrants issued by the county to the contractor are, we take it, simply evidence of his right to the moneys under the control of the county and due or to become due him.

WHITING, J. The defendant McMackin entered into a contract for the construction of, and he constructed thereunder, a drainage system, within the limits of defendant and appellant county. This contract was entered into and the work done under the provisions of chapter 134, Laws of 1907, as amended by chapter 102, Laws of 1909, being what is known as the "Drainage Act." The plaintiff and respondent furnished to McMackin certain of the materials used by him in the construction of the drainage system, and, not having been paid for the same, it brought this action, seeking a money judgment against McMackin and a mechanic's lien upon certain funds due and unpaid to McMackin, and remaining within the control of defendant county. The defendant county demurred to plaintiff's complaint. This demurrer was overruled, and it is from the order overruling such demurrer that the county has appealed to this court.

As we look at the issues raised upon this appeal, the real question before us for answer is whether or not a materialman who has furnished material used by a contractor in the construction of a drainage ditch constructed under the provisions of chapter 134, Laws of 1907, as amended by chapter 102, Laws of 1909, and known as the Drainage Act, is entitled to a mechanic's lien, under the provisions of article 2 of chapter 31 of the Code of Civil Procedure, against a special fund, raised in accordance with the provisions of said Drainage Act and due said contractor. Said article 2 provides liens in certain cases to subcontractors and laborers upon public improvements. At the time of the passage of the act which afterwards became and is now article 2 of chapter 31 of the Code of Civil Procedure, there was in this state a drainage law. Sections 2047-2078, Compiled Laws. We think no one would contend that said article 2 of chapter 31 was broad enough to give a mechanic's lien to a subcontractor or materialman who did work or furnished material in the construction of a ditch under the old Drainage Act. Is such lien law so broad in its terms that it gives a lien to such subcontractors and materialmen under our present Drainage Act? The following are the only sections of said law necessary for our consideration in reaching a decision in the matter now before us. These sections read as follows:

"Sec. 713. Every person who shall perform any labor or furnish any material for the construction or repair of any work for any county or municipal or public school corporation in this state to any person who shall have made any contract for such work with such corporation, upon complying with the provisions of this article shall have for his labor done or materials furnished a lien upon all moneys in the control of such corporation due or to become due under such contract."

"Sec. 721. This article shall apply to and include all cases and contracts under which work and materials shall heretofore have been or shall hereafter be done or furnished to any contractor for the construction or repair of any improvement for any county or municipal or public school corporation, upon any street, public highway or public ground, or upon any land the title to which shall have been at the time of making the contract or thereafter in such county or municipal or public school corporation and

for the purpose of which any appropriation of the funds of such corporation shall have been or shall hereafter be made or raised by such corporation; and this article shall also apply to and include actions and claims now pending for work done or materials furnished under any such contract; provided, that the provisions of this section shall not apply to any case where the improvement has been completed before the passage of this article except as to moneys left in the hands of such public corporation and to which the contractor would be otherwise entitled.''

The respondent contends that section 713, supra, is in no manner limited in its application by section 721, and that under the provisions of section 713 it is clearly entitled to a lien against the fund remaining within the control of the appellant corporation. Without in any manner intimating our views as to whether or not under said section 713 the respondent would be entitled to a lien, we think it is clear that it was the intent and purpose of the Legislature in enacting said section 721 to define the scope of the law of which it forms a part, and that such section limits the application of said law to the specific cases therein mentioned. We cannot agree with respondent's contention that the clear purpose of the enactment of said section was to make the entire law "retroactive in its application to certain specified cases." If such had been their purpose, the framers of this legislation would certainly not have included in this section the words, "or shall hereafter be." The rule for the construction of mechanic's lien laws, as sustained by the great weight of authority, is that announced in 27 Cyc. 20: "where the question is whether the particular case is within the statute, a strict construction should be given, but where the circumstances are such that there is clearly a right to a lien under the statute, and the question is whether the claimant has taken the proper course to establish his lien, the statute should be liberally construed." See, also, Nanz v. Park Co., 103 Tenn. 299, 52 S. W. 999, 47 L. R. A. 273, 76 Am. St. Rep. 650; Fidelity Storage Corp. v. Trussed Concrete Steel Co., 35 App. D. C. 1, 20 Ann. Cas. 1157. Applying this rule of strict construction in determining whether the facts in this case bring it within the limitations of section 721, is it possible to hold that a subcontractor, supplying material for the construction of a drainage ditch constructed under our Drainage Act, is entitled to a lien upon funds in the hands

of a county and due the contractor? A drainage system is certainly not an improvement upon a street, public highway, or public ground. There is nothing in the Drainage Act which either expressly or by inference makes a drainage system or any part thereof either a public highway or public ground. Is the establishment of a drainage system the construction or repair of any improvement for any county upon any land the title to which shall have been at the time of making the contract or thereafter in such county, and for the purposes of which an appropriation of the funds of such county shall have been or shall thereafter be made or raised by said county?

The Drainage Act in its main features provides in substance as follows: Upon a petition signed by one or more owners of real estate whose lands will be affected by the establishment of the drainage system, and which petition sets forth that the construction of the drainage ditch or ditches will be conducive to public health or practicable for the drainage of agricultural land, the county commissioners of the county wherein it is proposed to establish such drainage system, are required to proceed, with the aid of certain other officials and persons, to determine the necessity for and practicability of the proposed system. To this end public hearings are provided for, and right of appeal given. The petitioners are required to give a bond to secure the expenses of the preliminary investigations. The county commissioners may make an assessment against the lands within the drainage district to cover expenses of preliminary investigations and to pay damages for any property that will be taken or damaged by the drainage system. All assessments shall be in proportion to the benefits to be derived by the several tracts of land within the drainage district. If the commissioners determine in favor of the construction of such system, they shall enter into a contract or contracts for construction of same, and may provide in such contract for the payment of the construction either in cash or in drainage warrants or assessment certificates. For the purpose of covering the costs of preliminary investigation, damages, and construction of the system, the commissioners, if they so elect, may issue bonds payable out of money assessed against the lands within the drainage district, or, without the issuance of such bonds, they may issue warrants payable out of moneys collected on drainage assessments,

or may issue assessment certificates; and they may pay for the expenses, damages, and construction with the money derived from the sale of such bonds or with such warrants or certificates. (In passing we would state that the contract set forth in the complaint herein provided for the payment to be made either in warrants or assessment certificates.)   The property owners may unite in a written stipulation, agreeing upon a division of the costs of constructing a drainage system, and, upon the filing of such stipulation with the county commissioners the commissioners may proceed as they otherwise would under a petition.   The care of the ditch is intrusted to the county commissioners, but all expenses for such care and maintenance, including the expenses of the commissioners and other officers, is borne by the land within the district.   The title of the right of way may be procured, but the statute does not provide that title in fee shall be procured, nor does it state in whose name any title shall be taken, and we doubt if the statute contemplates the acquiring of anything more than an easement, which easement would become appurtenant to and vest in the owners of the dominant estates.   Though the statute provides for the giving of a name to each separate drainage district, there is no provision making such a district a corporate entity.

Even if under the statute the title to the right of way for the ditch was taken by and vested in the county, is the establishment of such ditch an improvement to the land comprised in the bed of such ditch, or is it an improvement to the land outside of the ditch and comprised within the drainage district?   Certainly the latter, and in this land the county has no interest.

The respondent relies upon the authority of the case of Bates County v. Mills, 190 Fed. 522, 111 C. C. A. 354, and has quoted freely from same.   This was also an action brought upon a drainage contract, under a law somewhat similar to our Drainage Act. All that was held in that case was that a contractor could sue the county.   The law before the court in that case specifically provided that the contract should be made for and on behalf of the county. No question of right to mechanics' lien arose in that case, and we are therefore unable to see wherein the holding of the federal court throws much light upon the question presented to us.   Even if it be conceded that the contract entered into by the county commissioners is the contract of the county, and even if it should be con-

ceded that under such contract the contractor would have a right of action against the county, yet it would not follow that, under section 721, supra, a subcontractor would have any lien against any property or fund in control of the county. In the Bates County Case, attention is called to the fact that the proceedings in in the establishment of a drainage system are somewhat analogous to those followed in establishing paving and sewer districts. While it is true that the method of procedure is somewhat analgous, yet the analogy extends no farther than in the method of procedure. Even if it should be held that the methods followed in the establishment and construction of drainage systems were, in every respect, analogous to those followed. in laying out paving and sewer districts, it does not follow that drainage systems would come under the limitations of section 721 simply because paving and sewer work do come under same. There is, as will be noticed, a specific provision for a lien for work or materials furnished for improvements upon streets and highways. It is well also to notice some of the fundamental differences between a drainage system, such as contemplated by our statute, and improvements upon streets and highways. In the establishment of a public street or highway, or in an improvement thereon, the main purpose in view is the conferring of a benefit upon the public to whom is given the free use of such streets and highways. There flows an incidental benefit to certain property, and it is owing to the peculiar benefit received by the adjacent property that the law often requires that the expense of opening or improving the highway be borne solely by such property. Frequently, however, such highways are established by the use of the public funds, and they are almost invariably kept in repair by such fund. In the case of a drainage system, while the law recognizes that there must be a certain element of public benefit, as otherwise there would be no constitutional authority for taking land for right of way, yet the principal purpose in view is the benefit which will flow to the property within the district. It is not contemplated that, when the system is established, the public shall have any other than an incidental interest therein or benefit thereform. The public has no direct right whatsoever in such drainage system. It has no right to enter thereon, no right to use the water thereform, or to receive any other than the mere incidental benefit flowing from increase of

taxes or improved sanitary conditions. The county, at its own expense, is not authorized to improve the same or keep it in repair. The establishment of a drainage system is, in its nature, as much a private enterprise as is the establishment of a water power system, or as would be the establishment of an irrigation system. Let us suppose that there was a statute providing that, upon the petition of one property owner owning real estate riparian to a stream of water, proceedings could be instituted to have all of the lands riparian to such stream incorporated into an irrigation district; such law providing that, upon the presentation of such a petition, some certain officer or body of officers should investigate the necessity of such district, and, if they found the same would be a public benefit, should proceed to the establishment of such district and the laying out of a complete irrigation system therein. Suppose such law provided for the establishment of a complete system of ditches for the distribution of the waters of said stream throughout such district and for the condemnation of land for right of way of the ditches, the expenses for all of which should be borne by the lands benefited thereby. Would the mere fact that into the hands of a certain officer or officers was given the passing upon the petition and the looking after this work, in any manner make such an enterprise one for the city, county, or other municipal district of which such person or body of men might be officers, when the public, as such, would have absolutely no direct rights in such irrigation system and be entitled to no direct benefits therefrom? We think not. It seems to us clear that enterprises of this kind, which merely for convenience of and to safeguard the rights of all parties are placed under the charge of and are carried out by public officers are no more public in their nature, and give to the municipality no more right or title in and to the lands improved, than would such municipality have in the same providing that such an enterprise should be established under sanction of law through the united efforts of the property owners without the intervention of any municipality or officer theerof.

The order overruling the demurrer to the complaint is re- thereof.

SMITH, J. I concur in the conclusion announced by Justice WHITING, but prefer to place the decision upon the ground that

the act creating the lien limits the application of the act itself to proceedings in which "an appropriation of the funds of the cor-"poration" is involved. It follows that where no appropriation of county funds—"funds of the corporation"—is made, or is neces-sary, the act creating the lien has no application. And even though no appropriation of county funds to pay for the ditch be necessary—because the fund is otherwise provided—still an ap-propriation "of funds of the corporation" is necessary to render the lien statute applicable. The drainage law itself appropriates the fund raised by special assessment to pay for the ditch, but such fund is not thereby made a "fund of the corporation." The statute expressly exempts the county and its funds from liability for the costs of construction of drainage. It seems to me the guarded and explicit language used in the act relating to liens results in a "casus omissus," which the courts are not justified in attempting to correct.

CORSON, J. (dissenting). I am unable to concur in the opinion of the majority of the court as in my judgment the facts stated in the complaint clearly bring the case within the provisions of section 721 if not under section 713 of the Code referred to and quoted in the opinion. In my judgment the title to the land over which the drainage ditch is constructed became the public prop-erty of the county, and therefore the facts presented by the com-plaint bring the case clearly within the provisions of section 721, and hence the construction of a drainage ditch is an improvement upon public ground of the county. By section 3 of chapter 102, Laws of 1909, amending section 5 of chapter 134, Laws of 1907, it is provided that the commissioners "shall assess the damages sustained by each tract of land or other property through which the same shall pass, and the damages as compensation for the land taken for the route of such drainage." By section 25 of the act of 1907 it is provided that *"the title to the right of way* of drainage may be derived by consent or purchase from the owners of the lands through which the same may pass as well as by the method of condemnation herein provided." This, it seems to me, shows conclusively that by the condemnation proceedings referred to the title to that portion of each tract of land over which the ditch is constructed passes from the owner. To whom then does it pass? Clearly it does not pass to the owners of the land within the

drainage district, as such owners are not made a corporation or vested with the power to take and receive the title. As the county is the party that exercises the right of eminent domain in acquiring the property over which the ditch is constructed, it necessarily follows that the. county is the party that acquires the title to the same, in trust, of course, for the benefit of the persons owning property within the drainage district. If this were not so, no person or corporation would be authorized to institute a suit for the protection of said drainage ditch from injury or destruction or to recover damages resulting from such injury or destruction. It will be noticed that the title to the land over which the ditch is to be constructed may be acquired by purchase as well as by the exercise of the right of eminent domain. When the right is acquired by purchase, who is to be the grantee in such a case unless it is the county? The reasoning in the opinion of the majority of the court seems to leave the title to the property over which the ditch is constructed and taken by condemnation proceedings or by voluntary conveyance of the parties vested in no individual or corporation. Construing, therefore, the Drainage Act in connection with section 721 quoted in the opinion, it seems to me clear that the title to the drainage ditch is vested in the county and is public property.

In the recent case of Bates County v. Wills, 190 Fed. 522, 111 C. C. A. 354, the United States Court of Appeals of this circuit, in construing the Drainage Act of Missouri, which seems from the opinion to be very similar to the Drainage Act of this state, says: "Viewing the legislation of the state relative to these drainage districts, we think it apparent that drainage districts were merely political subdivisions of the county for the special purposes of drainage, and were not at the time the contract was entered into created corporations capable of suing and being sued. The whole proceeding for the establishment of drainage districts, construction of ditches, assessing property therefor, and providing the funds to pay for the construction, was vested in the county court. * * * That the district formation was for the purpose of designating the territorial part of the county to be assessed for the payment hereof. Contracts of this character are analogous to those of a city, which establishes paving and sewer districts, issues paving and sewer district bonds, in which the real estate in

the particular district only is assessed for the improvement, the work being done on the theory that it is a local benefit, and the expense borne by the property specially benefited." Davenport v. County of Dodge, 105 U. S. 237, 26 L. Ed. 1018. It is hardly necessary to state that the county court of Missouri has the same powers and duties as boards of county commissioners in this state.

It will be observed by the provisions of the Drainage Act that the contract for the expenses incurred by the construction of the drainage ditch is to be made by the county, and under the ruling of the Supreme Court of the United States in the case of Davenport v. County of Dodge, supra, and in the opinion in the Bates Case, supra, the action upon the contract may be properly brought against the county and a special judgment entered providing for the payments of the same by taxes levied and collected from the property within the drainage district. By a fair construction, therefore, of the Drainage Act and in view of these decisions by the Supreme Court of the United States and the appellate court of this circuit, I am clearly of the opinion that the title to the land over which the drainage ditch is constructed is vested in the county.

It is suggested by Mr. Justice SMITH in his concurring opinion, in effect, that no appropriation of the funds had been made to this specific purpose, but in my opinion no appropriation was necessary, as the drainage law itself appropriates the fund derived from the assessment of the property to the payment of damages and the expenses of constructing the ditch. The demand for judgment in the complaint in this case only requires the county to pay over to the plaintiff the amount due the contractor. The plaintiff, therefore, does not seek to recover any of the county funds proper, but simply demands judgment adjudging him to have a lien upon the amount so due said contractor, and that the same be paid over to the plaintiff. Assuming as we may from the fact that the contractor makes no defense to the action that the amount claimed by the plaintiff is justly due him for materials furnished in the construction of the drainage ditch, I am of the opinion that the statute should be liberally construed in favor of the plaintiff; as it is clearly not material to the county whether

the amount so due the contractor shall be paid to him or to the plaintiff.

HANEY, J.    I think the order appealed from should be affirmed.