KANSAS MILLING Co., Plaintiff and Appellant, v. ROYAL BANK OF CANADA, Defendant and Appellee.

No. 7278. Argued June 17, 1937.—Decided July 28, 1937.

*R. Castro Fernández* and *J. López Baralt* for appellant. *J. H. Brown, G. E. González,* and *Walter L. Newson, Jr.,* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

From the stipulation submitted by the parties, it appears that the essential facts in this case are as follows:

The plaintiff company sold to the Yabucoa Bakery Co. 200 bags of flour for a price of $1,200. The flour was consigned to the order of the vendor with directions to notify the purchaser.

On August 6, 1930, the plaintiff sent to the Royal Bank of Canada in San Juan, for collection, a draft against the Yabucoa Bakery Co. for $600; and on August 15 in the same year, it sent a second draft for the same amount. Both drafts were drawn in favor of plaintiff and were payable at sight to the order of plaintiff, *through Royal Bank of Canada, San Juan.*

The defendant bank sent the two drafts and documents attached to the Bank of Yabucoa, which kept them in its possession until October 20, 1931, upon which date it delivered them to the Yabucoa Bakery Co., receiving from the latter the sum of $1,200, the amount of the drafts. The Bank of Yabucoa credited this collection in its books in favor of the defendant bank. On the afternoon of that same day the Bank of Yabucoa closed its doors, and was put into judicial liquidation. without having delivered the amount of the drafts to the defendant bank.

Plaintiff has requested the defendant to pay the two drafts, but defendant has refused to do so, contending that it is not liable therefor.

Attached to each of the drafts were the same printed instructions, among which was the following:

"Collecting Bank, note these instruction carefully before handling attached documents. . .

"The bill of lading or documents attached to this draft must not be detached or delivered to any other than drawee or his authorized agent . . .

"These instructions may be altered or changed only by our Wichita office."

Plaintiff contends that the Royal Bank of Canada was not authorized to deliver the drafts and documents attached to the Bank· of Yabucoa, and that in doing so, it disobeyed the express instructions above set forth and became liable.

The defendant bank maintains in its defense that it agreed to collect the two drafts in accordance with the conditions printed on the back of its printed form number 2 which it uses in connection with collection items; that as soon as it received the two drafts, it sent to the Kansas Milling Co. by mail, for each of the two drafts, a form number 2, which was the same as that offered as "Exhibit A" for the defendant; and that the defendant never received any objection or protest from the plaintiff as to the said conditions, which copied from "Exhibit A" read as follows:

"CONDITIONS.—Items not collectible in San Juan, Ponce or Mayagüez are received by us for collection at the owner's risk. Such items will be forwarded to our collecting agents at the points where items are payable on the understanding that this bank assumes no responsibility for the neglect or default of such collecting agents." The Royal Bank of Canada, San Juan, P. R.

Plaintiff denied receipt of such notices, and the defendant offered in support thereof the testimony of its chief of collections to the effect that such notices had been sent by him personally, by mail, to the plaintiff.

From August 27 to October 15, 1930, the Royal Bank of Canada sent weekly notices to the Kansas Milling Co , reporting on the status of the drafts pending collection, in all of

which, in referring to the two items here in question, it said: "Doc. held pending payment."

Plaintiff contends that by these weekly notices the defendant bank induced the plaintiff to believe that the drafts and the documents attached thereto were in the possession of the defendant.

It is an admitted fact that on various previous occasions, the plaintiff had sent to the defendant's San Juan branch drafts drawn by the plaintiff in its favor and against purchasers of flour, and that such drafts were sent by the defendant to local banks in different towns on the Island, to be collected and the proceeds remitted to the defendant, which in turn remitted the proceeds to the plaintiff.

It has also been admitted by the parties that it is an established banking practice in Puerto Rico, *except in case of specific instructions to the contrary,* to collect drafts sent to banks in San Juan by remitting the same to a local bank in the town in which the drawee resides, for collection and remittance to the San Juan bank, which in turn remits to the drawer after deduction of its commission for collection.

The case was submitted to the District Court of San Juan, which entered judgment dismissing the complaint. Plaintiff appealed.

In the first assignment the court below is charged with having erred in holding that the defendant bank did not become liable by delivering the drafts to the Bank of Yabucoa, since it did so in accordance with the conditions printed on the back of defendant's "Exhibit A".

The first question which we must consider and decide is: Where were the drafts here in controversy payable? Since they are both of the same tenor, we shall transcribe the first, which reads as follows:

"B/L No. 1072. The Kansas Milling Company. No. 1572–C Car No. AT&SF 128766. Wichita, Kansas, August 6, 1930. At_____ Sight Pay to the Order of Ourselves $600.00. Six hundred and

no/100 Dollars with exchange For value received, and charge to account of

Kansas Milling Company,
Per W. C. Morehouse.

To Yabucoa Bakery Co.,
Yabucoa, P. R.
Through Royal Bank of Canada, San Juan.''

In the fourth paragraph of the stipulation of facts it is said that the aforesaid drafts were ''payable at sight and to the order of the Kansas Milling Company *through Royal Bank of Canada, in San Juan, Puerto Rico.*'' Plaintiff contends that by reason of this stipulation defendant has admitted that the drafts were payable in San Juan. To this defendant replies that what it admitted was that the drafts were payable ''through'' the defendant bank ''in San Juan, Puerto Rico.''

If the drafts were payable in San Juan, as the appellant contends, the printed conditions on the back of defendant's ''Exhibit A'' above are entirely without importance in this case, since those instructions refer only to drafts not payable in San Juan, Ponce or Mayagüez. If on the contrary, as the appellee maintains, the drafts were payable in Yabucoa, the residence of the drawee, we shall in that case have to consider (*a*) whether the Kansas Milling Co. received and accepted the above mentioned conditions; (*b*) whether the defendant bank violated in any way the instructions attached to the drafts; and (*c*) whether the defendant bank was authorized to collect the drafts, notwithstanding the conditions thereto attached, in accordance with the established commercial practice in Puerto Rico for the collection of items payable outside of the domicile of the bank undertaking the collection.

We believe it unnecessary to decide whether the drafts were payable in San Juan or in Yabucoa, since in either case our decision must be based on the legal effect of the acts of the parties subsequent to the receipt of the drafts by the Royal Bank of Canada. We have already seen that these

drafts were accompanied by specific instructions that the documents should not be delivered to any person other than the Yabucoa Bakery Company. Those instructions show, in our judgment, the will of the drawer that the steps for the collection thereof should be taken and the proceeds received by the Royal Bank of Canada (Through the Royal Bank of Canada) without the intervention of a third person or banking correspondent. On receiving these instructions the defendant bank acknowledged receipt of the documents and at the same time sent to the Kansas Milling Company the conditions under which it agreed to undertake the collection of items not payable in San Juan.

The court below held that depositing in the mail form number 2, defendant's "Exhibit A", with the conditions printed on the back, was sufficient to bind the plaintiff, since it must be presumed that such document was received by the plaintiff, in accordance with the provisions of Section 102, paragraph 24, of the Law of Evidence.

We do not agree with the conclusions of the court below upon this point. The document "Exhibit A" cannot be deemed to be an unconditional acceptance of the original proposition of the Kansas Milling Co. It was in reality a counter-offer, by which the defendant bank offered to the Kansas Milling Co. to undertake the collection of the drafts, not under the specific conditions thereto attached, but under the conditions printed on the back of form number 2, defendant's "Exhibit A." Since this was a conditional acceptance, a counter-offer, the presumption of its receipt by the plaintiff is not enough to bind the plaintiff by the new conditions. Acceptance by the plaintiff was necessary.

Section 85 of the Code of Commerce, upon which the court below bases its decision, provides:

"Contracts executed through correspondence shall be perfected from the time an answer is made accept'ng the proposition or the conditions by which the latter may be mod'fied."

From "Restatement of the Law of Contracts," first volume, page 66, we copy the following:

"Section 60.—*Purported acceptance which adds qualifications.—A reply to an offer, though purporting to accept it, which adds qualifications or requires performance of conditions, is not an acceptance but is a counter-offer.*

"*Comment.—a.* A qualified or conditional acceptance is a counter-offer, since such an acceptance·is a statement of an exchange that the person making it is w'lling to make, differing from that proposed by the original offeror. A counter-offer is a rejection of the original offer. An acceptance, however, is not inoperative as such merely because it is expressly conditional, if the requirement of the condition would be implied from the offer, though not expressed therein."

The specific instructions attached to the drafts and the conditions on the back of the above mentioned form number 2 are contradictory and inconsistent with each other. The defendant bank could not bind the plaintiff to accept its counter-offer merely by depositing a copy of form number 2 in the mail and resting upon the presumption that the document was received by the plaintiff. The presumption that a letter duly addressed and deposited in the mail was opportunely received is a rebuttable presumption which may be controverted by other evidence. The plaintiff has controverted this presumption by presenting in evidence letters addressed to the defendant in which it denies having received the aforesaid form number 2. In our opinion the legal situation would not be changed even if we admitted that the plaintiff received the said document, since the receipt of a counter-offer is not sufficient to close a contract between the parties. It was necessary that the plaintiff accept the new conditions required by the defendant. Such acceptance has not been shown. See: 13 C. J. 281; *Greenwhich Bank* v. *Oppenheim,* 118 N. Y. S. 297; *Rushing* v. *Manhattan Life Ins. Co.,* 224 Fed. 74; *Minneapolis & St. Louis Railway* v. *Columbus Rolling Mill,* 119 U. S. 149.

The fact that the Kansas Milling Company did not answer, accepting or rejecting the counter-offer of the Royal

Bank of Canada cannot be interpreted as an acceptance of such counter-offer. Silence does not amount to consent, unless the person receiving the offer has a duty to answer. See: 13 C. J. 276, note 82.

■■ The defendant bank ought to have insisted that the plaintiff acknowledge receipt of the aforesaid form number 2 and accept or reject the counter-offer therein contained, before commencing collection of the drafts by delivery to some person other than the Yabucoa Bakery Co., thus violating the specific conditions attached to the drafts. Not only did the defendant bank do this, but during a period of almost two months—which was amply sufficient for the situation to have been cleared up—it sent weekly notices to the owner of the drafts, reporting that the documents were still in its possession pending payment, thus inducing the plaintiff to believe that the defendant bank was complying with the specific conditions attached to the drafts.

We think it unnecessary to discuss or express a preference for either the so-called "New York Rule," or the so-called "Massachusetts Rule," in view of our local statutes upon the subject. Our Civil Code provides:

"Section 1612.—An agent may appoint a substitute when the principal has not forbidden him to do so; but he shall be liable for the acts of the substitute:

"1. When the power to appoint such substitute was not granted him.

"2. When such power was granted him, but without designating the person, and the person appointed is well known to be incapacitated or insolvent."

In the instant case not only was the Royal Bank of Canada not given the power to deliver the drafts to the Bank of Yabucoa, but it was expressly prohibited from delivering the drafts to any person other than the Yabucoa Bakery Company. We cannot interpret the specific instructions of the plaintiff other than as an express prohibition, for the viola-

tion of which the defendant bank became liable for the acts of its substituted agent.

The established commercial practice in Puerto Rico for the collection of drafts payable outside of San Juan, Ponce or Mayagüez may not be invoked as against an express agreement between the parties or as against specific instructions from the owner of a draft, given probably for the purpose of preventing the bank selected by him to make the collection from acting in accordance with the established custom, according to which the owner of the draft assumes responsibility for the negligence or failure to pay of substitutes or subagents.

For the foregoing reasons we are of the opinion that in delivering the drafts to the Bank of Yabucoa, in violation of the specific instructions of the plaintiff, the Royal Bank of Canada assumed liability for the failure to pay of the Bank of Yabucoa, its agent, and that the judgment appealed from must be reversed and the defendant be adjudged to reimburse to the plaintiff the proceeds of the two drafts, that is, the sum of $1,200, together with interest at six per cent per annum from October 20, 1930, until full payment, plus the costs, but without including therein attorneys' fees.

Mr. Justice Córdova Dávila took no part in the decision of this case.